304-07PJG/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax



Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 0335)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MUR SHIPPING B.V.,

                                Plaintiff,

           -against-

MARVIER PROPERTIES S.A. a/k/a
MARIVIER PROPERTIES S.A.

                           Defendant.
----------------------------------------------------------x

JUDGE RAKOFF

07 CIV 6360

**07 Civ.**

**VERIFIED COMPLAINT**

           Plaintiff, MUR SHIPPING B.V. (hereinafter "MUR") for its Verified Complaint against

Defendant MARVIER PROPERTIES S.A. a/k/a MARIVIER PROPERTIES S.A. (hereinafter

"MARVIER"), alleges upon information and belief as follows:

           1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breaches of maritime contracts

of charter party. This case also falls under this Court's admiralty and maritime jurisdiction

pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C.

§1331. Federal jurisdiction also exists because the action arises under the New York Convention

on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 et seq. and/or

the Federal Arbitration Act, 9 U.S.C. §1 et seq.

2.      At all times material hereto, Plaintiff MUR was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Atrium Building, Strawinskylaan, 3011, NL 10077 ZX, Amsterdam, The Netherlands.

3.      At all times relevant hereto, Defendant MARVIER was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at HSBC Bank Building, 6th Floor, Samuel Lewis Avenue, P.O. Box 6, Panama City, Panama and an agent at Frank Symons Ltd., Devonshire House, 146 Bishopsgate, London EC2M 4JX, England.

4.      Defendant MARVIER utilizes other entities as paying or funding agents for purposes of receiving, holding and/or transferring funds, including but not limited to Neguel Shipping Inc. a/k/a Neguel Shipping Inc. Panama which entity is used to hold, transfer, receive and/or is in possession of assets of Defendant MARVIER.

5.      On or about October 13, 2003, Plaintiff MUR, in the capacity as charterer of the M/V ENRICHER, entered into a maritime contract of charter party with Defendant MARVIER, as owner, for a period of six to nine months 15 days more or less at charterers' option. A copy of the 2003 charter party is annexed as Exhibit A.

6.      Thereafter, on or about September 27, 2005, Plaintiff MUR, in the capacity as charterer of the M/V ENRICHER, entered into a separate maritime contract of charter party with Defendant MARVIER, as owner, for a minimum period of six to nine months 15 days more or less at charterers' option. A copy of the 2005 charter party is annexed as Exhibit B.

7.      Under the terms of the two above referenced charter parties, hire was earned and expenses were incurred, and there remains a balance due in favor of MUR in the amount of

$42,418.62 under the terms of the 2003 charter party and $210,272.60 under the terms of the 2005 charter party.

8.    Claims have also arisen against MUR for contamination of cargo onboard the M/V ENRICHER for which MARVIER is responsible, in the amount of $35,619.70.

9.    The charter parties provide for the application of English law and all disputes between the parties are to be resolved by arbitration in London, where arbitration has already been commenced and MUR specifically reserves its right to arbitrate the substantive matters at issue.

10.    This action is brought to obtain jurisdiction over MARIVER and to obtain security in favor of Plaintiff MUR in respect to its claims against MARVIER and in aid of London arbitration proceedings.

11.    This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorney fees and costs in the arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

12.    Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorney fees, arbitrators' fees, disbursements and interest are recoverable as part of Plaintiff's claim.

13.    Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the London arbitration will be $50,000 and  interest on its damages in the London proceedings are estimated to be $46,285.67 (calculated at the rate of 6% for a period of 2.5 years, the estimated time for completion of the arbitration in London).

### Request for Rule B Relief

14.    Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain

Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in either of its names to wit: MARVIER PROPERTIES S.A. a/k/a MARIVIER PROPERTIES S.A. and/or in the name of its paying and/or funding agent Neguel Shipping Inc. a/k/a Neguel Shipping Inc. Panama, at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

15.    The total amount to be attached pursuant to the calculations set forth above is $384,596.59.

WHEREFORE, Plaintiff MUR SHIPPING B.V. prays:

a.    That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b.    That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$384,596.59** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in either of its names or as may be held, received or transferred for its benefit, including those in the name of its

funding or paying agent Neguel Shipping Inc. a/k/a Neguel Shipping Inc. Panama at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.    That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any judgment entered against the Defendant in the London proceedings; and

d.    For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
      July 12, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff MUR SHIPPING B.V.

By: _____
      Peter J. Gutowski (PG 2200)
      Pamela L. Schultz (PS 0335)
      80 Pine Street
      New York, NY 10005
      (212) 425-1900

## **ATTORNEY VERIFICATION**

State of New York    )
                     ) ss.:
County of New York  )

PAMELA L. SCHULTZ, being duly sworn, deposes and says as follows:

1.      I am an associate with the law firm of Freehill Hogan & Mahar, LLP, attorneys

for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents

thereof, and the same is true to the best of my knowledge, information and belief.

2.      The sources of my information and the grounds for my belief are

communications, information and documentation provided by our client and/or by solicitors

representing our client.

3.      The reason this verification is made by an attorney and not by the Plaintiff is

because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial

District.

_____
Pamela L. Schultz

Sworn to before me this
12 day of July 2007

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/08

NYDOCS1/285532.1                            6

HFEVIOObb

Print For: ASM
Type.....: Email - Internet
Msg.Nr...: IN ,320405
Created..: 14-Oct-2003 17:26
From.....: <frank.symons@btclick.com>
Subject..: ENRICHER/RECAP
Comment..: Recvd: (CPID:4/SECS:1)

Originating Author: Chris Cox (frank.symons@btclick.com)

FROM: frank.symons@btclick.com
DATE: 14-OCT-03 16:19
MSG.: 560532

ALLISTER/CHRIS


FULL AND FINAL RECAP


ENRICHER/MUR CP DTD 14 OCTOBER 2003
-----------------------------------

ALL NEGOS  AND ANY EVENTUAL FIXTURE TO REMAIN STRICTLY P AND C

ACCT MUR SHIPPING B.V

MV  ENRICHER  AS DESC CP 22-MAY-03

QSTRE TO BE INCORPORATED IN C/P
SEE BELOW

VSLS ITINERARY : VSL ETC-S MAPUTO 12 OCT ETA MOMBASA 17 OCT ETCS 20 OCT ETA
SALEEF 27 OCT ETR 30 OCT AGWWOGWP

DEL DLOSP SALEEF ATDNSHINC
27 OCT/07 NOV
6 TO 9 MONTHS TC ALWAYS 15 DAYS MOLCHOPT ON MIN/MAX PERIOD TRADING VIA
SPS SBS SAS AWIWL IN/OUT GEOG ROT AA EXCEPT NAABSA AS PER NYPE CL 6
REDEL DLOSP OR PSG 1 SP SKAW/CAPETOWN (INCL UK,CONT,FULL MED,BLACK
SEA),CAPETOWN/ADEN RGE , ADEN/JPN RGE( INCL PG,FULL INDO,FULL MALAYSIA,
RECIFE/BB
HIRE USD 7,700 DAILY INCL OT
BUNKERS ON DELIVERY TO BE SUFFICIENT TO REACH SAFRICA WITH SAFETY MARGINS
BUNKERS ON REDLY ABOUT SAME QTY'S AS ON DELIVERY
PRICES BENDS USD 186 PMT IFO AND USD 253 PMT MDO
CHOPT TO SUPPLY RMF IN SOUTH AFRICA WHERE RME 25 IS NOT AVAILABLE .CHRS TO
BUNKER VESSEL WITH FUEL TO ISO 8217 STANDARDS ONLY
ILOHC USD 4000 INCL REMOVAL,DISPOSAL OF DUNNAGE,LASHING MATERIAL ,DEBRIS
INTER HOLDCLEANING USD 500 PER HOLD INCL WASHING DOWN WITH FRESH WATER.
crew/owners not responsible if vessel fails
        inspection and vessel to remain on hire.


C/V/E/ USD 1,200 PER MONTH PRO RATA

OWISE AS PER MAIN TERMS AND AS PER ENRICHER CP DTD 22/5/2003 EXCEPT

19 delete additional wording

cls 48 country exclusions ;delete vietnam and add usa,canada,australia,new
zealand,scandinavia,israel,zaire,iraq,albania,
somalia,banjul,sierre leone,liberia,turkish occupied cyprus,
bagged cargo to yemen,bagged cargo to nigeria and all countries where
united nations inpose trade sanctions and all countries where war and
warlike situations exist.

CL 52 DELETE FISHMEAL

CL 60 L 2 AFTER ""DAMAGE INSERT ""BUT SAME TO BE REPORTED LATEST ON SAILING
PORT OF DISCH FOR EACH VOYAGE

3.75 ADDCOMM YE PLUS 1.25 PCT FS

END


QUESTIONAIRE
> ----
> >
> >
> > Metall und Rohstoff Shipping RSA (Pty) Ltd
> > Questionnaire
> >
> > 1. General
> > Last updated: by:
> > 1.1 Vessel M.V. ENRICHER
> > 1.2 Previous Names OCEAN WAVE / OCEAN GLORY / SEA ARCHITECT
> > 1.3 Flag PANAMA
> > 1.4 Construction date 3/1981
> > 1.4 Construction place CHINA
> > 1.5 Yard name and no. CHUNG HUA SHIPYARD
> > 1.6 IMO No. 7725350
> > 1.6 Lloyds number ---- (BV Number: 81L016)
> > 1.7 Class of vessel BV
> > 1.8 Port of Registry PANAMA
> > 1.9 Owners MARVIER PROPERTIES S.A.
> > 1.10 Managers SEALION SHIP MANAGEMENT LTD, MUMBAI
> > 1.11 Disponent Owners
> >
> > 2. Particulars - A
> > 2.1 Vessel Type TWEEN DECKER
> > 2.2 DWAT/Draft/Immersion
> > DWAT metric
> > Type Tons Draft TPI / 77.4MT
> > Summer 18962MT @ 9.744M
> > Winter 18346 MT @ 9.541 M
> > Tropical 19584 MT @ 9.947 M
> > Fresh Water 18962 MT @ 9.962 M
> > Tropical FW 19584 MT @ 10.165 M
> > 2.3 Is vessel fitted for transit:
> >,Panama Canal YES (PRESENTLY NOT WORKING)
> >,Suez Canal YES
> >,St Lawrence Seaways NO
> > 2.4 Panama: State deadweight
> > 2.5 Affect by bilge turn radius
> > 2.6 St Lawrence: State deadweight

```
> > 2.7 GT/NT
> > International 13392 / 7567
> > Suez 13380 / 6736
> > Panama 14579 / 10733
> > British
> > 2.8 Length overall (meters) 164.30
> > 2.9 Length between perpendiculars 154.00M
> > 2.10 Extreme breadth 22.86M
> > 2.10 Depth moulded 13.20M
> > 2.11 Distance form waterline to top of hatch:
> > Fully loaded
> > Full ballast (holds not flooded)
> > Full ballast (holds flooded)
> >
> > 2. Particulars - B
> > 2.12 Deballasting time
> > 2.13 Accepted loading rate
> > 2.14 Distance from keel to:
> > Hatch top
> > Highest fixed point of vessel 39.40 M (RADAR SCANNER)
> > 2.15 Capacity - Ballast tanks (100%) -- 4625 CUM (4744 MT)
> > 2.15 Capacity - Hold ballast N/A
> > Hold numbers
> > 2.16 Constants excl fresh water ABT. 400 MT
> > 2.16 Daily fresh water consumption 11 MT
> > 2.16 Fresh water capacity 387.1 CUM
> > 2.16 Capacity/production - evaporator PRESENT OUTPUT: NIL (Under
> repairs)
> > 2.16 Normal fresh water reserve
> > 2.17 Fitted with shaft generator NO
> > 2.18 Onboard electric supply - v/hz 380 V / 50 CYCLES
> > 2.18 Details of alternative supply 220V / 50 CYCLES
> >
> > 3.1 Holds
> > A Number of holds 4 HOLDS
> > B Holds free of obstruction
> > C Capacity CUBM CBFT
> > Grain
> > Bale
> TWEEN DECK
> LOWER HOLD
> GRAIN BALE GRAIN BALE
> #1 / 1756.1 1616 CUM 2226.7 1980.9 CUM
> #2 / 3478.8 3411 5112.9 4632.8
> #3 / 3478.8 3411 5100.9 4620.7
> #4 / 2077.8 2024.6 3345.6 3013.5
>
>
> > E Strengthened for heavy cargo YES
> > Empty holds
> > F Tanktop Steel
> > G Corrugations NO
> >'I Holds Co2 fitted YES
> >'J Smoke detection YES
> >,K Australian holdladders NO
> > L Stowage calculator NO
> > P Ventilation MECHANICAL -- 5 BLOWERS
> > Air changes per hour
```

```
> >
> > 3.2 Hatches
> > A Number of hatches 7
> > B Make and type of hatchcovers -- SINGLE PULL / CHINESE
> > F Distance from bow to fore of 1st hold
> > G Distance from stern to aft of last hold
> > H Vessel fitted with cement holes
> >
> > 4. Speed and Consumption
> > 4.1 Beaufort Scale 4 Douglas sea state 3
>
> ABT. 13.0 KTS @ IFO (180 cst) / ABT 24 MT
> PD + abt 2.5mt mdo pd
> >
> > 4.2 Bunker Grades IFO 180CST RME25 MDO DMB OR DMA
> > 4.3 Bunker capacities 100% 1518 CUM (1442 MT)
> > 4.3 Bunker capacities 90% 1365 CUM (1298 MT)
> > 4.4 Consumption port idle 2.5 MT PD (1 GEN)
> > 4.4 Consumption port 8 hrs
> > 4.4 Consumption port 24 hrs GEAR WORKING 6.0 MT PD (2 GENS)
> > 4.5 Engine make and type MITSUI B&W / 6300Z SERIES / 26 PST
> > 4.6 Max. output BHP - 11200 BHP @ 119 RPM
> > 5. Bankers
> >
> > 6. Classification
> > 6.1 Classification society BUREAU VERITAS
> > 6.2 Date of last special survey 28/09/00
> > 6.3 Date of last annual survey  27/09/03
> > 6.4 Vessel in enhanced survey program
> > 6.4 Date of last inspection   21/08/02
> > 6.4 Date of next inspection
> > 6.5 Date of last drydock 09 / 2002
> > 6.5 Place of last drydock AHI, AJMAN
> > 6.6 Pollution incidents, last 12 mos NIL
> > 6.6 Details of pollution incident
> > 6.7 Groundings/collisions, last 12 mos NIL
> > 6.7 Details of grounding/collision NIL
> > 6.8 ISM certified YES
> > 6.8 Issued by REPUBLIC OF PANAMA
> > 6.8 Date of issue 27/05/2003
> > 6.8 Expiry date 21/02/2008
> > 6.8 Date of last audit 05/03
> > 6.8 Date of next audit
> > 6.8 Recommendations NIL
> > 6.8 DOC certified YES
> > 6.8 Issued by REPUBLIC OF PANAMA
>
> > 6.8 Date of issue 01/10/03
> > 6.8 Expiry date 28/05/08
> > 6.9 Date of last port state control   08/09/03
> > 6.9 Place of last port state control   KLAIPEDA
> > 6.10 Passed without detentions
> >' 6.11 Crew ITF covered
> >'6.12 ITF number
> >,6.12 ITF issue date
> > 6.12 ITF expiry date
> > 6.13 Certificates
> > Issue date Last annual endrsement Expiry date
```

```
> > Special survey 27/09/05
> > Loadline 27/09/05
> > Safety equipment 03/09/04
> > Gear survey
> > Safety radio
> > Int. oil pollution 27/09/05
> > Deratisation
> > 6.14 Recommendations to certificates NIL
> > 6.14 Recommendation details
> > 6.15 IMO registration number 7725350
>
> > 6.16 Expiry date of FMC certificate
> >
> > 7. Communication
> > 7.1 Call sign HONG
> > 7.2 Name of radio station
> > 7.3 Inmarsat A phone number N/A
> > 7.4 Inmarsat A fax number N/A
> > 7.5 Inmarsat A telex number N/A
> > 7.6 Inmarsat C telex number 435 544 810 ENRR
> > 7.7 e-mail address N/A
> >
> > 8. Insurance
> > 8.1 Hull and machinery insured value USD 2,000,000
> > 8.2 Name of Owners P and I insurers AXA CORPORATE SOLUTIONS
> >
> > 9. Crew
> > 9.1 Number of crew 26 including MASTER
> > 9.2 Name of master Capt. Rakesh Bansal
> > 9.2 Nationality of master INDIAN
> > 9.3 Nationality of officers INDIAN
> > 9.4 Nationality of crew INDIAN
> >
> > 10. Miscellaneous
> > 10.1 Called at C.I.S. Far East Ports N/A
> > Called at C.I.S. When
> > Called at C.I.S. Where
> > 10.2 Last 5 Cargoes
> > Cargo No Commodity Loading Port Discharging Port
> > 1 WHEAT FM KLAIPEDA - MAPUTO/MOMBASA/SALEEF
> > 2 STEEL + GRANITE FM S.AFRICA - MDC/RIJEKA/VENICE
> > 3 MAIZE FM ROSARIO - MAPUTO
> > 4 MAIZE FM CONSTANTA - NACALA / BEIRA
> > 5 GRANITE FM BEIRA/DURBAN - MARINA DE CARARA
>
> > 10.3 Fitted for carriage of grain in accordance with chapter IV Solas
> > 1974 and amendments without requiring bagging
> > With ends untrimmed
> > 10.4 Number of holds which may be left slack without requiring bagging,
> > strapping and securing ONE
> >
> > 11 Cargo Gear
> > 11.1 Gear, make IHI ELECTROHYDRAULIC CRANES
> > 11.1 Gear, type ELECTROHYDRAULIC CRANES
> > 11.2 Number of cranes/derricks 5 SWL -- 25 L.TONS SINGLE
>   with one set of gemini combo cranes
>
> tt strengths
```

```
>
> 1) 10mt/m2
>
> 2/3/4) 15mt/m2
>
> twendeck  strengths  abt 4mt/m2
>
> maindeck and hatchcovers  abt 2.5 mt/m2
>
> owners confirm that vessel has gemini cranes which can combine over holds
  3 and 4 in workable condition and can lift 50 mts.


  ENDS


  BEST RGDS
```

ORIGINAL

WORKING COPY

Frank-Symes Limited
CHARTERING AGENTS
AND
SHIPBROKERS
LONDON

# Time Charter

GOVERNMENT FORM

*Approved by the New York Produce Exchange*

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; Octobr 3rd, 1946

**This Charter Party**, made and concluded in Johannesburg .................................22nd... day of May.................... 192003

Between *MARVIER PROPERTIES S.A.* .........................................................................................

Owners of the good *PANAMA FLAG BUILT 1981* ...........Steamship/Motorship *ENRICHER*................................................... of .......................

of *13392*.................... tons gross register, and *7567*.................... tons net register, having engines of ...................... indicated horse power

and with full cargo spaces, machinery and equipment in a thoroughly efficient state and appearance, and classed *BY* .........................................................

at ..................... of about *24710.5*......... cubic metres feet bale capacity available for cargo, and about *18962 metric*............. tons of *2240 lbs*.

deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,

allowing a minimum of fifty tons) on a draft of ...........................feet on ......................... inches on ....................... Summer freeboard, inclusive of permanent bunkers,

which are of the capacity of about ...tons of fuel, and capable of steaming throughout the entire period of this Charterparty, fully laden, under good

weather

conditions about *13*........... knots on a consumption of about *24 metric*. tons of *IFO 180 est PLUS about 2.5 metric tons MDO* best Welsh coal—best

grade fuel oil—best grade Diesel oil,

now *trading – see also Clause 54 and description Clause 80* .................................. Charterers of the City of *MONROVIA* ..........................................

.................................................. and Messrs *MARIMED SHIPPING INC*. ..........................................

**Witnesseth**, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

about *one timecharter trip via safe port(s)/safe berth(s)/safe anchorages always afloat always within IWL in/out geographical rotation*

............................................................................................................... within below mentioned trading limits.

Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

the fulfilment of this Charter Party. *Acceptance of delivery by Charterers shall not constitute any waiver of obligations hereunder*

Vessel to be placed at the disposal of the Charterers, at *on dropping last outward sea pilot station MAPUTO* ..........................

*any time day or night Sundays and holidays included*

in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No.6), ra-

the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No.5. Vessel on her delivery to be

*ready and fit in every way to receive and carry any permissible cargo and to be maintained in such condition during the entire period*

*of this Charterparty* to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted for the service, having water ballast,

winches and

donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches *cranks* at one and

the same

time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

dise, including petroleum or its products in proper containers, excluding *see Clause 52*................................................

(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,

all necessary fittings and other requirements to be for account of Charterers) in such lawful trades, between safe port and/or ports in British North

America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or

Mexico, and/or South America World Wide Trading within IWL . See Clause 48 ...................................... and/or Europe,

and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, St. Lawrence between

October 31st and May 15th, Hudson Bay and all unsafe ports, also excluding, when out-of-season, White Sea, Black Sea and the Baltic,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31

32
33
34
35
36

as the Charterers or their Agents shall direct, on the following conditions:

1.    That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees *including agency fees if any* -
*ref Clause 87* of the Crew; shall pay for the
insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep
the vessel in a thoroughly efficient state in hull, *cargo spaces* machinery and equipment for and during the service.

37
38
39

2.    That *whilst on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, *Customary* Pilotages,
Agencies, Commissions,

40

Consular Charges (except those pertaining to the Crew) *and flag of the vessel* and all other usual expenses except those before stated, but when the
vessel puts into

41
42

a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
illness of the crew *or cargoes carried prior to delivery* to be for Owners account. Fumigations ordered because of cargoes carried or ports visited
while vessel is employed under this

43
44

charter to be for Charterers account. ~~All other fumigations to be for Charterers account after vessel has been on charter a continuous period
of six months or more.~~

45

Charterers are to provide necessary dunnage ~~and shifting board~~, also any extra fittings requisite for a special trade or unusual cargo, but
Owners to allow them the use of any dunnage ~~and shifting boards~~ already aboard vessel. ~~Charterers to have the privilege of using shifting boards
for dunnage, they making good any damage thereto.~~

46
47
48

3.    That the Charterers, *at the port* of on delivery, and the Owners, ~~at the port of~~ *on* re-delivery, shall take over and pay for all fuel remaining on
board the vessel ~~at the current price in the respective ports, the vessel to be delivered with not less than~~ ................................ tons and not more than
................................ *tons as per Clause 54*

49
50
51
52

~~......................................... tons and to be delivered with not less than~~ ...........................

4.    ~~That the Charterers shall pay for the use and hire of the said Vessel at the rate of $ per Clause 29.~~

53
54
55
56

~~United States Currency, per ton on vessel's total deadweight carrying capacity, including bunkers and
stores, on ......... summer freeboard, per Calendar Month, commencing on and from the day of her delivery, as aforesaid, and at
and after the the same rate for any part of a month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary
wear and tear excepted, to the Owners (unless lost) at see Clause 90.~~ ...........................

57
58

........................... unless otherwise mutually agreed. Charterers are to give Owners not less than *15/10/5/3/2/1* ........ days
notice of vessels expected date of re-delivery, and probable port.

59
60
61
62

5.    Payment of said hire to be made *as per Owner's banking details* ~~in New York~~ in cash in United States Currency, ~~semi-monthly~~ *every 15
(fifteen) days* in advance, and for the last half month or
part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes
due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the
hire, or bank guarantee, ~~or on any breach of this Charter Party~~ the Owners shall be at liberty to withdraw the vessel from the service of the Char-
terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working day see
Clause 29.~~

63
64
65

~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they
to have the privilege of using vessel at once, such time to count as hire.~~

Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain *subject to Owners' approval,* by the Charterers
or their Agents *at their discretion,* subject

66
67
68

to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application
of such advances.

6.    That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *safe* place *in port or elsewhere* that
Charterers or their Agents may

69

direct, provided the vessel can safely *enter, lie always afloat and depart* at any time of tide, ~~except at such places where it is customary for similar size~~

70 ~~vessel to safely~~
71 ~~aforeground.~~
72 7.    That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also
-73- accommodation for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,
74 tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow. Charterers~~
75 ~~paying Owner ................................. per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~
76 ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~
77 8.    That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and
78 boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
agency; and Charterers are to load, stow, ~~and~~ trim,*lash,unlash,tally and discharge* the cargo at their expense under the supervision of the Captain,
who is to sign Bills of Lading for
79 cargo as presented, in conformity with Mate's or Tally Clerk's receipts.*However the Master and Owners nevertheless to remain ultimately*
*responsible for the seaworthiness and safety of the vessel in all circumstances*
80 9.    That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on
81 receiving particulars of the complaint, investigate the same, and, if necessary *and practical*, make a change in the appointments.
82 10.    That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted
83 with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the
84 rate of $10.00 per day. Owners to victual Pilots and Customs Officers, and also, ~~when authorized by Charterers or their Agents,~~ to victual Tally
85 Clerks, Stevedore's Foreman, etc., Charterers paying USD 1000 lumpsum *per month pro rata for cables/victualling/entertaining* ~~at the current~~
~~rate per meal for all such victualling~~
86 11.    That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the
87 Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-
88 terers, their Agents or Supercargo, when required, with a true copy of daily *deck and engine* Logs *in english*, showing the course of the vessel and
distance run and the con-
89 sumption of fuel.
90 12.    That the Captain shall use diligence in caring for the ventilation of the cargo.
91 13.    ~~That  the  Charterers  shall  have  the  option  of  continuing  this  charter  for  a  further  period  of~~ *as  instructed  by  the  Charterers*
92 ........................................................................... ~~days previous to the expiration of the first named term, or any declared option,~~
93 ~~on giving written notice thereof to the Owners or their Agents.~~
94 14.    That if required by Charterers, time not to commence before *5 JUNE 2003*................................................. and should vessel
95 not have given written notice of readiness on or before *12 JUNE 2003* ......................... but not later than 4 p.m.*2400 hours local time* Charterers or
96 their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.
97 15.    That in the event of the loss of time from deficiency *and/or default and/or strikes of officers and crew whether due to labour*
*dispute or otherwise or deficiency of stores*, fire, breakdown or damages to hull, machinery or equipment,
98 grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause
99 preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by
100 defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence
101 thereof, and all extra *direct/proven and duly supported by vouchers* expenses shall be deducted from the hire.
102 16.    That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be
103 returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,
104 Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.
105 The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the
106 purpose of saving life and property.
107 17.    *Arbitration as per Clause 61.*~~That  should  any  dispute  arise  between  Owners  and  the  Charterers,  the  matter  in  dispute  shall  be  referred  to~~
~~three persons at New York,~~
108 ~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for~~
109 ~~the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.~~

110    18. That the Owners shall have a lien upon all cargoes, and all sub-freights *and sub-hires* for any amounts due under this Charter, including General Aver-

111    age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess
112    deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
- 113    might have priority over the title and interest of the owners in the vessel.

114    19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
115    Crew's proportion. General Average shall be adjusted, stated and settled, according to ~~Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of~~
116    York-Antwerp Rules ~~1924~~ *1994 as revised In London,* at such port or place in the United States as may be selected by the carrier, and as to matters
117    ~~not provided for by these~~

117    ~~Rules, according to the laws and usage at the port of New York, in such adjustment disbursements in foreign currencies shall be exchanged into~~
118    ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~
119    ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~
120    ~~bond and such additional security as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~
121    ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~
122    ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~
123    ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~
124    ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~
125    ~~United States money.~~

126    ~~In the event of accident, danger, damage or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~
127    ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~
128    ~~goods, the shipper and the consignee jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~
129    ~~losses, or expense of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~
130    ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~
131    ~~ships belonged to strangers. See New Jason Clause as attached.~~

132    ~~Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.~~
133    20. Fuel/*diesel* used by the vessel while off hire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and
the

134    cost of replacing same, to be allowed to Owners.

135    21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~
136    ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~
137    ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~

138    *Drydocking only in the event of an emergency* ..................................................................................................................................................

139    ..................................................................................................................................................................................................................................

140    22. Owners shall maintain the gear of the ship as fitted, providing gear (for all *cranes derricks*) capable of handling lifts up to *maximum*
capacity *in accordance with description Clause* ~~three tons, also~~

141    ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~
142    ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account.~~ Owners also to provide on the vessel *sufficient light for night*
*work In all holds simultaneously*

143    ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense.~~ The
144    ~~lanterns and oil for~~
145    Charterers to have the use of any gear on board the vessel.

146    23. Vessel to work night and day and on Sundays and holidays, if required by Charterers, and all winches *cranes* to be at Charterers' disposal
during loading and discharging *All winchmen/cranesmen to be provided and paid by Charterers. Watchmen ordered by the Master to be for*
*Owners account. All other watchmen including compulsory to be for Charterers account.*

147    ~~Steamer to provide one winchman per hatch to work winches day and night, as required. Charterers agreeing to pay officers, engineers, winchmen,~~
148    ~~deck hands and donkeyman for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rule of the~~
149    ~~port, or labor unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers. In the event of a disabled winch or winches, or~~
   ~~insufficient power to operate winches, Owners to pay for above engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned~~

thereby *See clause 37*

24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels, etc." in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both of which are to be included in all bills of lading issued hereunder.

U. S. A. Clause Paramount

This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

Both-to-Blame Collision Clause

If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier. *See Both-to-Blame Collision Clause as attached.*

25. The vessel shall not to be required to enter any Ice-bound port, or any port where lights or light-ships have been or are about to be withdrawn by reason of Ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the port or to get out after having completed loading or discharging. *Trading always via ice free port(s) and vessel not to follow ice breaker(s). See also Clause 44.*

26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the navigation of the vessel, *acts of pilots and tugboats* insurance, crew, and all other matters, same as when trading for their own account.

27. A commission of 2 1/2 Per 1.25 cent is payable by the Vessel and Owners to
*FRANK SYMONS LIMITED LONDON*
on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

28. An address commission of 2 1/2 3.75 per cent payable to Charterers ……………………… on the hire earned and paid under this Charter.

*Additional Clauses 29 to 93 ,Convartime Clause,New Jason Clause,General Paramount Clause and NEW Both-to-Blame Collision Clauses,as attached, to be included in all Bills of Lading issued under this Charterparty.*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A.) Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licencee or end user as appropriate and not by the author.

RIDER CLAUSES TO M.V. 'ENRICHER' CHARTERPARTY DATED 22 May 2003

29.Hire

    a)  The Charterers shall pay for the use of the vessel at the rate of US Dollars 7,000 (USD Seven Thousand ) daily including overtime,commencing from the day/time of her delivery payable every 15 days in advance or pro rata for any part of a day up to the day/time of her redelivery.GMT will apply on delivery and redelivery respectively.

b) It is agreed that the hire is to be considered correctly paid upon receipt of same to Owner's bankers as stated hereunder

    However in the event of default in the payment if hire,Owners are to telex Charterers informing them of the default. Owners are not to withdraw the vessel if Charterers make good the default within three clear bank working days of Receiving Owner's notification or provide a guarantee to secure the alleged under or non payment within such period.

c) Hire – see Clause 5 – to be paid every 15 days in advance to:

NEGUEL SHIPPING INC PANAMA

KREDIETBANK SA LUXEMBURGEOISE
43 BOULEVARD ROYAL
LUXEMBOURG
SWIFT CODE KBLXLULL – TELEX 3418

A/C NO 52-24596822

INTERMEDIARY BANK
KREDIETBANK NEW YORK
A/C NUMBER 10149405
SWIFT CODE KREDUS33

REF – ENRICHER/MUR

d) The Charterers have the liberty to retain sufficient funds from any hire to cover actual and estimated (max USD 1000 per port) amounts which to be duly supported by vouchers in due course , including actual off-hire and from the last sufficient hire payment value of estimated bunkers on redelivery for Owners' account.

30. NOTICES

Owners/Master shall give notice on fixing and then 5 days approximate and 3/2/1 days definite notice of delivery to:

MESSRS METAL UND ROHSTOFF SHIPPING RSA (PTY) LTD
187 RIVONIA ROAD
MORNINGSIDE,SANDTON
SOUTH AFRICA
TEL – 0027113020000
FAX – 0027118831545
TELEX 420617 MUR SA
CABLES MACFEAST JOHANNESBURG

## 31. HOUSE-FLAG MARKINGS – Deleted

## 32. ARREST/SEIZURE

Should the vessel be arrested and/or seized during the currency of this Charterparty at the suit of any person having or purporting to have a claim against , or any interest in the vessel or by any other default of the Owners, hire under this Charterparty shall not  be payable in respect of any period whilst the vessel remains under arrest only if such arrest affects loading,discharging operations or otherwise delays the vessel ( or prevents performance of the service  next required by the Charterers ) and the Owners shall reimburse to the Charterers any direct, proven and duly supported by vouchers expenditure which they mave incur under this Charterparty in respect of any period during which by virtue of the operation of this clause no hire is payable unless such arrest is caused by actions of Charterers and/or their sub Charterers and/or their agents.

## 33. VESSEL DETENTION

Should the vessel be seized and/or detained and/or geographically constrained in relation by any government or body (whether legally constituted or not) or by any persons acting out of a malicious,belligerent or political motive or as a result of any action by any such government body or persons,the vessel shall be off hire for all time thereby lost and fuel oil/diesel oil consumed and all port charges whilst off-hire for Owners account,unless vessel be seized and/or geographically constrained due to Charterers and/or sub-Charterers and/or their servants legal or illegal actions,trade and service in which case vessel to be on hire and all expenses arising therefrom to be for Charterers account.

## 34. DISCRIMINATION

In the event of loss of time due to boycott of the vessel by shore labour or arising from government restrictions by reasons of vessel's flag or the terms and conditions by which members of the crew are employed  or by any reason of Owners' operation or control.vessel to be off-hire and all  directly related expenses to be for Owners' account.

35.That in the event of the loss of time from deficiency of men or stores and/or default and/or strikes of officers and crew whether due to labour  dispute or disputes with Unions or associations concerned or connected with Owners affairs or otherwise,fire,breakdown or damages to hull,machinery or equipment,grounding,detention by average accidents to ship or cargo,dry docking for the purpose of examination or painting bottom or other necessary to maintain the efficiency of  the vessel, or by any other similar cause whatsoever preventing the full working of the vessel,the payment of hire shall cease for the time thereby lost,and if upon the voyage the speed be reduced by defect in/or breakdown of any part of her hull,machinery or equipment,the time so lost,and the cost af any extra fuel consumed in consequence thereof and all extra expenses shall be deducted from the hire.

Should the vessel deviate or put back during a voyage contrary to the orders or directions of the Charterers for any reason except saving life,the hire to be suspended from the time of her putting back or deviating until she is again in the same or equidistant position from the destination and the voyage resumed therefrom.

After suspension of hire from any cause ,the vessel shall be placed at Charterers disposal at the same port or position where hire was suspended.Charterers may,however, in their option accept the vessel on hire again in such position and at such time as the vessel may again in all respects be ready to comply with the orders and directions of the Charterers.provided always to be either same port/position or equidistant.

The Charterers may in their option at any time add to the Time Charterparty period,partly or wholly any off-hire period(s).The rate of hire for any such added period(s) shall be paid at the same rate as that applicable during the off-hire period(s).

During any off-hire period estimated to exceed 8 days,the Owners to give the Charterers not less than 3 (three) days definite notice of resumption of the service.

If the vessel has been off-hire for a period of 20 ( twenty) consecutive days during this Charterparty,the Charterers shall have the option but to cancel this Charterparty and redeliver the vessel.

36. Normal quarantine and expenses to enter the port to be for Charterers account but any time of detention and expenses for quarantine due to pestilence,illness etc of Master,officers and crew,to be for Owners' account.

## 37. GEAR BREAKDOWN

In the event of partial or total breakdown and/or of unavailability of ship's derrick(s)/crane(s) for any reasons whatsoever the hire to be reduced pro rata for the period of such breakdown and/or unavailability in relation to the number of vessel's holds available.If Charterers in their opinion continue work on hatch or hatches affected by breakdown by hiring shore appliances,Owners are to pay for extra shore appliances but in such case Charterers are to pay full hire for all time shore appliances are working.Any stevedoring charges additionally accruing due to breakdown of vessel's equipment,including cost for standby of stevedores limited to one shift ,to be for Owners' account.

## 38. READINESS

On arrival at the first load port vessel's holds to be swept,fresh water washed and cleaned , dry and free of all remains of previous cargo and loose rust and scale,free of infestation to Charterers surveyor's satisfaction, and  the Owners warrant that the vessel is in every way fit to receive any cargo permissible under this Charterparty.In case the vessel fails to pass inspections as requested by the Charterers and/or their surveyors then the vessel shall be off hire from the time of rejection until such time as the vessel passes inspection. Nevertheless it is a condition of this Charter that the vessel shall fully comply with all Charterers inspectors Requirements with 5 days after failing first inspection ( provided the vessel has arrived within the laydays as agreed) otherwise the Charterers shall have the option of cancelling this Charter.

### 39. CERTIFICATE/VACCINATIONS

Owners are obliged to deliver and keep the vessel ,her crew and anything pertaining hereto supplied with all the
required up-to-date and valid international trading certificates,enabling the vessel and her crew to load,carry
and discharge all cargoes permitted under this Charterparty and to call at all ports for cargo operations and/or
to receive bunkers within the trading limits of this Charterparty.

It is the responsibility of the Master and the Owners to arrange for any special vaccination required at all ports
of call and to keep on board corresponding valid certificates.

If Owners fail to comply herewith any time lost and all extra expenses to be for Owners account and
Charterers may deduct same from hire.

### 40.SURVEYS

Joint on-hire plus bunker survey to be held at first load port during waiting or loading time and joint off-hire
plus bunker survey to be held prior to redelivery during waiting or discharge time.Costs to be shared 50/50.
Any time lost at load to be for Charterers account and any time lost at discharge to be for Owners account.

41. In the event of loading steels pre-loading survey is to be carried out by Owners P and I club surveyor at
Owner's expense.

Master is at liberty to insert Owners' P and I Club surveyors remarks on Mate's receipts.

### 42. INTERNATIONAL TONNAGE CERTIFICATE

Upon delivery the vessel shall have on board an International Tonnage Certificate valid for the duration of
this Charterparty and such Tonnage certificate shall be acceptable by the local authorities at the countries of
call within the trading limits of this Charterparty.Should such certificate not be acceptable to the local authorities
any time lost and all extra direct,proven and duly supported by vouchers expenses for issuing an acceptable
certificate are to be for the Owners' account.

### 43. ITF/FLAG RESTRICTIONS

Owners warrant that the officers and crew of the vessel are covered for the duration of this Charterparty by
an ITF agreement or other bona fide Trade Union agreement conforming to ITF standards acceptable world
wide covers the officers and crew of the vessel for the duration of this Charterparty.Loss of time and extra
expenses incurred as a result of non compliance shall be Owners account and may be deducted from hire.

The Owners are responsible for any loss of time or delay or restriction to the full working of the vessel resulting
from any action that may be taken against the ship and/or the Owners by third parties for any reason that
Owners are responsible.Any time lost as  a consequence of any such action by third parties shall be considered
as off-hire and shall be deducted from the hire.Any extra expenses resulting directly from such action shall be
the responsibility of and paid for by the Owners or,in Owners option,shall be paid by Charterers and deducted
from the hire.

Owners warrant that the vessel is not blacklisted by any country within the trading limits of this Charterparty.

## 44. OIL POLLUTION

Notwithstanding any terms or conditions stated elsewhere in this Charterparty it is warranted that during the currency of this Charterparty Owners will comply fully with any legislation enacted with respect to oil or other pollution (such expression to include any rules and/or regulations issued thereunder) by any government including federal,state or municipal or other division or authority thereof. In particular, Owners to establish and maintain at their expense such financial security or responsibility in respect of oil or other pollution damage as may be required by any such legislation.Should any delay to the vessel or any extension of the voyage occur from failure of Owners to comply with such oil or other pollution legislation, the vessel is to be considered off-hire for the period of such delay.Owners hereby accept responsibility for all the direct consequences and agree to indemnify Charterers against all claims,liabilities and costs (including Charterers' legal fees) which result from Owners failure to comply fully with such oil or other pollution legislation.

## 45. P AND I CLUB/CARGO CLAIMS

Owners warrant that the vessel is entered and shall remain entered in a Protection and Indemnity Association for the duration of this Charterparty.Entry shall include, but not be limited to, full cover for cargo claims of any nature and Owner's liability for personal  accidents or injuries incurred by third parties on board or about the vessel.

Vessel is presently entered with the AXA Corporate Solutions..

## 46. CLAIMS

All claims of whatsoever nature (excluding cargo claims) to be deemed to be waived and barred unless arbitration in accordance with Clause 61 is commenced within 12 months of vessel's redelivery.

Any cargo claim to be settledin accordance with the Interclub NYPE Agreement with amendments to date but subject to notification of claims within 15 months of cargo discharge instead of the 2 years provided by the Interclub Agreement.

## 47. LIABILITY INSURANCE

The Charterers shall not be responsible for loss of life nor personal injury nor arrest or seizure or loss or damage to the vessel, her cargo and/or other objects arising from perils insured against by Owner's policies or insurance.



## 48. TRADING EXCLUSIONS

The vessel shall be employed in such lawful trades between safe ports and places within IWL excluding:

CAMBODIA/NORTH KOREA/RUSSIAN PACIFIC COAST/VIETNAM/ISRAEL/CUBA and any other countries prohibited  from call at by the flag State.

Charterers to get proper official port clearances by actual calling of an intermediate port for the trading between Taiwan and Republic of China at their time/expense.

### 49. WAR RISK INSURANCE

Basic annual war risk insurance of vessel and/or crew to be for Owners account.Any extra war risk insurance premium charged by Owners Underwriters by reason of vessel's trading under this Charterparty to be for Charterers account and to be refunded to Owners by Charterers upon receipt of Owners Underwriters invoices. All additional war risk insurance to be based on minimum rates of Lloyd's London Underwriter's Committee. Any crew war bonus payable by reason of vessel's trading under this Charterparty to be refunded to Owners by Charterers.

### 50. BIMCO ISM CLAUSE

The BIMCO ISM Clause to apply throughout the currency of this Charterparty.

From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charterparty, the Owner shall provide that both the vessel and 'the Company' (as defined by the ISM code) shall comly with the requirements of the ISM code. Upon request the Owners shall provide a copy of the relevant document of Compliance(DOC) and Safety Management Certificate (SMC) to the Charterers.Except as otherwise provided in this Charterparty, loss, damage,expense or delay caused by failure on the part of the Owners or 'the Company' to comply with the ISM code shall be for Owners' account.

### 51. Deleted.

### 52. CARGO EXCLUSIONS

Vessel too trade with lawful merchandise,except for the following commodities,which always to be excluded:

LIVESTOCK/PETROLEUM OR ITS PRODUCTS/NUCLEAR AND-OR RADIOACTIVE MATERIALS,PRODUCTS,WASTE/ACIDS/MOTOR SPIRIT/CALCIUM CARBIDE/ARMS/ AMMUNITION AND FIREWORKS/SUNFLOWER SEED EXPELLERS/ASPHALT/WET HIDES/NAPTHA/CHARCOAL/TAR/DIRECT REDUCED IRON ORE PELLETS/HYPOCHLORITE/ SPENT OXIDE/CANARY SEED/FISSILE MATERIAL/IRRADIATED NUCLEAR WASTE/ HAZARDOUS WASTE/POND COAL/BLACK PWODER AND BLAST CAP NITRATES/ EXPLOSIVES/FERRO SILICON/PENCIL PITCH/FISHMEAL/SULPHUR/SALT/ MOTOR BLOCKS AND TURNINGS.

All cargo to be loaded,stowed,carried and discharged in accordance with IMO regulations.

Charterers have the option to carry 2000 mt Bagged ammonium nitrate (IMO 5.1/UN NO 1942) provided same always loaded/stowed/labelled and discharged strictly in accordance with IMO and Local regulations.

53. The Charterers are to have the option to carry full deck loads within the capability of the vessel's and the deck/hatch strengths in accordance with usual marine practice and deck load will be controlled by vessel's stability and seaworthiness and always at Master's discretion and satisfaction and at Charterers risk and expense.Bills of lading to be claused ' carried on deck at Charterer's/Shippers' risk and expense' howsoever caused.

## 54. BUNKERS

Bunkers on delivery as on board plus same quantities on redelivery.Owners expect to deliver with about 200 metric tons IFO plus about 130 metric tons MDO.Bunkers on redelivery to be the same as actually on delivery. Prices same both ends USD 180 per metric ton IFO plus USD 230 per metric ton MDO.As long as same does not interfere with Charterers discharge operation Owners to have option of taking bunkers prior redelivery.

Charterers to take over and pay for bunkers on delivery together with first hire payment.Owners to have the option to bunker the vessel for their account at a convenient port without interfering with the vessel's operations.

The Charterers shall have the liberty to bunker the vessel for their own account before delivery,provided same does not interere with Owners' business.

Upon delivery or at first or subqesuent port(s) after delivery and upon redelivery or at the last port(s) prior to redelivery, a joint bunker survey shall be made in order to establish bunker figures which shall be final and binding upon both parties.

Charterers have the option to supply RMF 25 in South Africa where RME 25 is not available.

Where Owners have merely stated MDO in the description Clause then Charterers have the option to supply MDO according to BSMA 100 1989 M3 (ISO 8217 1987 DMC)

Bunker supply at Singapore always to be in accordance with the Singapore authority bunkering procedure.

## 55. VESSEL'S PERFORMANCE

Will be monitored by an independent weather routing company appointed by Charterers at Charterers expense and if vessel's performance should fall short of described speed, Charterers shall advise Owners immediately providing them with reports of independent weather routing company.All matters regarding hire/bunkers to be settled/adjusted at  vessel's redelivery.

The independent weather routing company will, prior to vessel's departure from port,give the Master a recommended route to the next port of call and make further recommendations during voyage.However the decision and responsibility for the final route selection will be the Master's.The Master will comply with the reporting procedure of the routing service selected by the Charterers.

Evidence of weather conditions shall be taken from the vessel's deck logs and independent weather bureau's reports (the Independent Weather Routing Company).In the event of a discrepancy between the deck logs and the independent weather bureau reports,then weather bureau's reports shall be taken as binding on both parties.It is understood vessel's speed and consumption warranty is applicable only basis conditions upto and including Beaufort Scale 4.

If the Charterers have reason to be dissatisfied with the performance of the vessel,the Owners,upon receiving complaints shall immediately investigate and take appropriate steps to correct the situation.

## 56. MASTER'S/CREW'S ASSISTANCE

With reference to Clause 8 of this Charterparty hire to include ' customary assistance' which shall mean all types of work which the Master and the crew would normally do when the ship is trading for the Owners' account provided that all or part of such works are permitted by port authority and/or local regulations such as, but not limited to:

a)   raising and lowering and rigging derricks/cranes and/or gangways in preparation for loading and/or discharging
b)   opening and closing of hatches in connection with loading and discharging,if local regulations permitting
c)   closing and opening of hatches in the event of weather which may adversely affect condition of cargo carried on board during loading and discharging if local regulations permitting
d)   customary supervisions of loading and discharging.Master to remain responsible for the stowage of the vessel insofar as this concerns the trim and/or stability of the vessel.
e)   Maintaining sufficient steam/electric power and all cranes in good order whilst loading and discharging including regular maintenance of derricks/cranes
f)   Shifting vessel during loading and discharging and shifting berth
g)   docking and undocking
h)   bunkering
i)   weather permitting, officers and crew to shape up vessel's hatches and derricks/cranes as much as possible prior too arrival at loading and/or discharging ports or places so as to immediately commence loading and/or discharging operations.

## 57. HATCH COVERS

Vessel's hatch covers are and to remain during the currency of this Charteparty in proper condition,totally watertight/weathertight.Any time lost and/or expenses incurred as the result of hatch vovers not being weather/watertight to be for Owners' account.

## 58. BILLS OF LADING

Charterers or their agents are herewith authorised to issue and sign Bills of Lading as presented on Owner's/Master's behalf in accordance with Mate's receipts without prejudice and/or reference to this Charterparty.Master to advise Charterers directly of any notation made on Mate's receipt.Charterers indemnify Owners against all consequences incurred to the vessel or Owners as a result of signing Bills of Lading by the Charterers and/or sub-Charterers and/or their agents in niot conforming with Mate's receipts.

## 59. SUPERCARGOES/PORT CAPTAINS

The Charterers and/or their supercargo(es) shall have free and unlimited access to the whole vessel including bridge,holds and engine room and also to all vessel's tanks,including but not limited to : bunker,lubricating oil sludge,ballast and freshwater tanks.Whenever required the Master must bring the vessel into even trim to ensure correct bunker soundings.The Charterers and/or their supercargo(es) and/or surveyors to have free and unlimited access to the vessel's decks and engine log books,tank plans,calibration scales and/or other plans as requested and are allowed to make copies of the original log books on board or ashore.

Charterers to sign and send to Owner's office Letter of Indemnity as per Owner's text in case they decide to place the Supercargo and/or their representative on board.

## 60. STEVEDORE DAMAGE CLAIMS

Any damage caused by stevedores during the currency of this Charterparty shall be reported by the Master to the Charterers or their agents,in writing,within 24 hours of the occurrence or discovery (in the case of hidden damage) otherwise Charterers not to be responsible.The Master shall use his best efforts to obtain written acknowledgement by responsible parties causing damage unless damage should have been good in the meantime.

Stevedore damage affecting seaworthiness or the proper working of the vessel and/or her equipment shall be repaired without delay to the vessel after each occurrence in the Charterer's time and shall be paid for by the Charterers.Other repairs shall be done at the same time,but if this is not possible,same shall be repaired whilst vessel is in drydock in the Owner's time provided this does not interfere with the Owner's convenience. All proven costs of such repairs shall be for the Charterers account.

## 61. LMAA ARBITRATION CLAUSE

All disputes or differences arising out of or under this contract which cannot be resolved amicably shall be referred to arbitration in London.

Unless the aprties agree upon a sole arbitrator,one arbitrator shall be appointed by each party.In the case of an arbitrator on documents,if the two arbitratos so appointed are in agreement,their decision shall be final. In all other cases the arbitrators and the reference shall be to the three-man tribunal thus constituted.

If either of the appointed arbitrators refuses to act or is incapable of acting the party who appointed him shall appoint a new arbitrator in his place.

If one party fails to appoint an arbitrator,whether originally or by way of substitution for two weeks after the other party,having appointed his arbitrator,has ( by telex/fax) called upon the defaulting prty to make the appointment, the President for the time being of the London Maritime Arbitrator's Association shall,upon application of the other party,appoint an arbitrator on behalf of the defaulting party and that arbitrator shall have the like powers to act in the reference and make an award (and , if the case soo requires,the like duty in relation to the appointment of a third arbitrator) as if he had been appointed in accordance with the terms of the agreement.

This contract is governed by English law and there shall apply to all proceedings under this clause the terms of the London Maritime Arbitrators' Association current at the time when the arbitration proceedings were commenced.All appointees shall be members of the Association.

Provided that where the amount in dispute does not exceed the sum of USD 50,000 any dispute shall be resolved in accordance with the Small Claim's Procedure of the London Maritime Arbitrator's Association.

## 62. LIEU OF HOLD CLEANING ON REDELIVERY

The Charterers have the option ro redeliver the vessel with unclean holds including removal/disposal of dunnage/lashing material/debris in consideration for which Charterers are to pay a lumpsum of USDollars 3,500 including removal/disposal dunnage/lashing materials.

63. When indicating speed of 'about' this gives the vessel an allowance of half a knot.'Good weather' is accepted as up to/including weather of Beaufort 4 and Douglas Sea state 3.

## 64. FITTINGS

Charterers to have the option to weld padeyes and/or other lashing/securing devices/points at their expense and subject to the Master's approval which not to be unreasonably withheld.Charterers to remove all such padeyes and/or other lashing/securing devices/points prior to redelivery.Charterers have the option not to remove padeyes etc. in consideration of which Charterers are to pay USD 15.00 per padeye etc.Any lashing/separation materials required to be provided and paid for by the Charterers.

## 65. GRABS

Charterers to have the liberty to use suitable and in accordance to vessel's gear lifting capacity grabs for loading/discharging in all cargo holds subject to arrange such grabs at Charterers time and expense.Vessel's holds/hatches to be clear and free from all obstructions and suitable in every respect for grab discharge.All/any pipes/wires/cables to be covered and protected and Owners to be responsible for any/all damage if incurred due to vessel's non compliance with this Clause.

## 66. SAFE BALLAST

Owners guarantee vessel always to be safe in ballast and it is agreed that if any solid ballast is required , all expense for same including time used in loading and discharging to be for Owners account.

## 67. BALLAST/DEBALLASTING

Vessel to ballast/deballast clean water ballast tanks if required by Charterers or their agents at any time during loading and/or discharging, free of expense to Charterers but in Charterers time.All ballasting/deballasting shall be at the discretion of Master having due regard to stability and seaworthiness of the vessel.(for guidance only deballasting times about 8/10 hours only for upper/lower ballast tanks always excluding hold ballast.)Owners warrant that the vessel is not blacklisted by Richards Bay Coal Terminal (RBCT) and furthermore that the vessel in every way complies with RBCT rules and regulations.

## 68. GENERAL AVERAGE

Hire not to contribute to General Average.

69. Vessels main engine uses MDO for maneouvering in/off ports,rivers,canals and in poor visibility.

## 70. HOSE TEST

Charterers to have the option to hose test or ultra sonic test the vessel's hatchcovers at the loading port(s) at their time/expense and should same not be watertight,Owners have the obligation to arrange necessary measurements in order to make the hatchcovers fully watertight.Owners shall be given by Charterers three working days after which if the hatchcove are not watertight ,Charterers have right to cancel this c/p and redeliver the vessel,provided no cargo is onboard.

71. Deleted.

## 72. BOYCOTTS

In the event of loss of time,boycott of the vessel or any labour trouble by shore labour,seamen's unions,tugboats,pilots,linesmen,stevedores and local authorities etc.,whether official or unofficial, arising by reason of vessel's flag,nationality or registry,her ownership,terms and conditions on which crew members are employed on this or any other vessel under the same ownership and/or operations and/or control payment of hire shall cease for the time thereby lost.

## 73. CUSTOMS/FINES

Owners to be responsible for customs' fines and to put up security in case of necessity if Owner's vessel is proven responsible and if so demanded by local authorities for Owner's matter unless fines imposed to the vessel due to cargoes and/or Charterers and/or sub-Charterers and/or their agents omissions or faults in which case any expenses including security if necessary to be provided and paid by Charterers and vessel to remain fully on hire.Any dispute as to ultimate liability arising insofar to be decided according to the terms and conditions of this Charterparty.

Owners to be responsible for any fines whatsoever in the event of smuggling acts by their own officers and/or crew,Owners passengers and/or stowaways and Owners to remain responsible for detention of the vessel due to smuggling and any other expenses arising from these acts.Charterers to be similarly responsible in respect of Charterers representatives and/or servants.

## 74. Deleted

## 75. PLANS

Immediately on vessel being fully fixed Owners to courier to Charterers a good and reliable copy of each of vessel's Capacity Plan and General Arrangement Plan and Midship Section Plan,this to include deadweight scale.

76. For the purpose of conducting a draft survey,the vessel must have on board certified calibrated scales for vessel's tanks and double bottoms and capacity plans,displacement scale and any other documents and information necessary for conducting a draft survey.The vessel's marks fore/aft/midship to be clearly legible.

## 77. SUEZ/PANAMA

Throughout the period of this Charter, vessel to be properly equipped to transit the Suez and Panama Canals , to have on board current,valid Suez Canal and Panama Canal certificates and vessel and her fittings to comply with all applicable requirements/regulations of the Canal authorities.Any delays and extra expenses incurred in transit of Canal through vessel's lack of proper certificate and/or fittings and equipment to be for Owner's account.

78. If Charterers wish to load hot rolled coils then Owners confirm that coils may be loaded line for line in as many tiers as is necessary but always within vessel's permissible tanktop strengths and to Master's satisfaction with regard to stress,trim and stability requirements.Coils to be loaded and stowed in accordance with American standard loading procedures and in compliance with load/discharge port requirements.Above cargo to be adequately dunnaged and lashed to ensure safe stowage to Master's satisfaction .

79. Garbage disposal always for Owner's account.

80. VESSELS DESCRIPTION – AS PER ATTACHMENT

Owners warrant that the vessel is entered with and fully covered by a PANDI Club that is a member of the
International Group of PANDI Clubs.
Owners warrant that the vessel is classed and will remain so throughout the currency of the Charterparty
by a Classification Society that is a full member of the International association of Classification Societies.

81. Deleted

82. Deleted

83. Deleted

84. In case vessel will be employed in Liner service where it is customary to discharge cargoes without
presentation of original Bills of Lading and no Letter of Indemnity is necessary,Charterers will discharge
cargoes into custody of their agents and hereby guarantee that cargo(es) will only be released against
presentation of original Bills of Lading.Owners confirm master will be instructed accordingly.

85. In case the Original Bill(s) of Lading are not available at discharge port(s),Owners/Master are to allow
the discharge/release/change of destination of the entire cargo against a single Letter of Indemnity in
Owner's PandI Club standard wording signed by Charterers only.(It is understood that separate Letter of
Indemnity will be required in case of change of destination.)

86. All taxes and/or dues on vessel and/or cargo and on Charter hire and freights arising out of cargoes
carried or ports visited under this Charterparty shall be for Charterers account,except taxes levied on
vessel's flag and in connection with port of vessel's registry which to be for Owners' account

87. Owners have the benefit of Charterers' agents in dealing with vessel's/crew's matters in all ports of
call without paying agency fee.

88. It is expressly agreed that Charterers will not issue or cause to be issued Bills of Lading which are
subject to the provisions of Hamburg rules – except in cases where compulsory is applicable.

89. Deleted.

90. REDELIVERY.

On dropping last outward sea pilot safe port in Charterers option FULL MEDITERRANEAN SEA INCLUDING
ADRIATIC AND BLACK SEA  EXCLUDING ISRAEL any time day or night Sundays and holidays included.

91. Deleted

92. Deleted

## 93. AMERICAN CLAUSE

If vessel calls at any US ports for purposes of loading and discharging cargo and/or embarking or disembarking passengers,vessel's cargo gear and all equipment must comply with regulations established by US Public Law 85-742 Part 9 Safety and Health Regulations for Longshoring). If longshoremen are not permitted to work due to failure of the Master and/or Owners agent to comply with the regulations and any delay resulting therefrom shall be for Owners account.

Owners warrant vessel has not called in any country which could prohibit vessel from loading/discharging in the USA.

Owners warrant that they have secured and carry aboard the vessel a US Federal Maritime Commissions Certificate of Financial Responsibility as required under the current US Water Quality Improvement Act and Pollution Act 1990 as may be amended from time to time.In any case Owners shall be liable for any and all consequences arising from their failure to obtain the aforementioned certificates.